## Case No. 15,225.

UNITED STATES v. GOLDMAN et al.

[3 Woods, 187.] [1]

Circuit Court. D. Louisiana. Nov. Term. 1878.

CONSPIRACY—INDICTMENT—CONGRESSIONAL ELECTIONS—FEDERAL JURISDICTION.

1. An indictment based on section 5520. Rev. St. U. S., for conspiracy to prevent by force. etc., a citizen lawfully authorized to vote from giving his support and advocacy in a legal manner in favor of the election of a lawfully qualified person as a member of congress, need not set out the acts of advocacy and support which the conspiracy was formed to prevent.

[Cited in U. S. v. Milner, 36 Fed. 891.]

2. The jurisdiction of a court of the United States to try persons accused of conspiracy under said section, is not ousted by the fact that the indictment charges that in carrying out their design the conspirators were guilty of a crime of which the state courts had exclusive jurisdiction, even though such crime were of higher grade than the conspiracy charged.

3. Section 2 of article 1 of the constitution of the United States, confers upon the electors in each state, who have the qualifications requi-

site for electors of the most numerous branch of the state legislature, the right to vote for representatives in congress, and congress has the constitutional power to protect that right.

4. Power is conferred on congress, by section 4 of article 1 of the constitution, to regulate the time, place and manner of holding elections for representatives in congress. This includes the power to protect the electors in a free interchange of views, in making a free choice, and in expressing that choice freely at the ballot-box.

5. Congress had constitutional power to enact section 5520 of the Revised Statutes.

Heard on demurrer to indictment. The indictment was based on section 5520. Rev. St., which declares: "If two or more persons in any state or territory conspire to prevent by force, intimidation or threat any citizen who is lawfully entitled to vote from giving his support or advocacy in a legal manner toward or in favor of the election of any lawfully qualified person as an elector for president or vice-president of the United States, or as a member of the congress of the United States, or to injure any citizen in person or property on account of such support or advocacy, each of such persons shall be punished by a fine of not less than $500 nor more than $5,000, or by imprisonment with or without hard labor not less than six months nor more than six years, or by both such fine and imprisonment." The indictment consisted of three counts. The first charged that [J. Carneal] Goldman and the other defendants, on October 12, 1878, at the parish, of Tensas, "did conspire together, and with others, to the grand jurors unknown, to prevent by force, intimidation and threats Fleming Branch, Daniel Canada, Willie Singleton and others, whose names are to the grand jurors unknown, from then and there giving their support and advocacy in a legal manner towards the election of one J. W. Fairfax, a lawfully qualified person, as a member of the congress of the United States from the Fifth congressional district of the state of Louisiana, they the said Fleming Branch, Daniel Canada, Willie Singleton and others aforesaid, each and every one of them then and there being citizens of the United States and of the said state of Louisiana. duly and properly registered under the laws of Louisiana and lawfully entitled to vote. That for the purpose of effecting the object of the said conspiracy by force, intimidation and threats, as aforesaid," the said Goldman and others therein named, "did on the said 12th day of October. A. D. 1878. at and in the said parish of Tensas and state of Louisiana. assault and shoot and inflict great bodily injury upon the said Fleming Branch, Daniel Canada. Willie Singleton and others, as aforesaid, and upon each and every one of them, contrary to the form of the statute." etc. The second count charged that the defendants and others did feloniously conspire, at the same time and place stated in the first count, "to prevent by force, intimidation and

[1] [Reported by Hon. William B. Woods, Circuit Judge. and here reprinted by permission.]

threats certain citizens of the United States, and of the said state of Louisiana, residing in the parish of Tensas, in said state, and in the Fifth congressional district thereof, to wit, Fleming Branch, Daniel Canada, Willie Singleton and others, whose names are to the grand jurors unknown, from giving their support and advocacy in a legal manner, to wit, by convoking and holding public meetings; by the delivery of public addresses; by the organization of political clubs and societies, and by other similar and lawful means towards and in favor of the election at a general election thereafter, to wit, on the first Tuesday after the first Monday in the month of November then ensuing, to be held under the laws of the state of Louisiana, in the said parish of Tensas, and at which said election a member of the congress of the United States for the said Fifth congressional district of the state of Louisiana was to be voted for and elected, of one J. W. Fairfax, a person then and there lawfully qualified, as a member of the congress of the United States for the said Fifth congressional district of Louisiana, they the said Fleming Branch, Daniel Canada, Willie Singleton and others aforesaid, and each and every one of them then and there being lawfully entitled to vote at the general election so then about to be held as aforesaid." The second count avers the overt acts of the defendants in carrying out said alleged conspiracy in the same words substantially as the first, and concludes "contrary to the form of the statute," etc. The third count charged that the defendants did feloniously conspire among themselves, and each with the other, to injure Fleming Branch, Daniel Canada, Willie Singleton and others, to the grand jurors unknown, citizens of the United States, and of said parish of Tensas and state of Louisiana, and legally qualified voters, in their person and property, on account of the support and advocacy by them, the said Branch, Canada, Singleton and others aforesaid, then and there given in a legal manner, to wit, by convoking and holding public meetings; by the delivery of public addresses, and by the organization of political clubs and by other similar and lawful means towards and in favor of the election of a lawfully qualified person, to wit, one J. W. Fairfax, as a member of the congress of the United States for the Fifth congressional district of the state of Louisiana, at a general election to be held, to wit, on the first Tuesday after the first Monday in November, A. D. 1878, according to the laws of the state of Louisiana, etc. This count then alleged the overt acts committed by the defendants in carrying out said conspiracy, in substantially the same terms as the first and second counts, and concluded "contrary to the form of the statutes," etc.

The defendants filed demurrers to each of the three counts on substantially the same grounds. The grounds pressed upon the at-

tention of the court were: (1) That the counts were defective in not specifying the time, place and circumstances of the acts of advocacy and support of the election of said Fairfax as a member of congress by said Branch and others. (2) It was objected that in the execution of the conspiracy it was alleged that the conspirators shot the parties against whom the conspiracy was formed, and therefore the allegations as to the overt acts showed a merger of the lesser crime in the greater, and thus the indictment on its face showed a want of jurisdiction in this court. (3) It was objected that the act of congress on which the indictment is based was unconstitutional.

A. H. Leonard, U. S. Atty., for the United States.

T. J. Semmes, W. F. Mellen, and Julius Aroni, for defendants.

Before WOODS, Circuit Judge, and BILLINGS, District Judge.

WOODS, Circuit Judge. We shall notice the objections to the indictment in the order above stated.

1. With respect to the statements of the charge in an indictment for conspiracy, it may be observed that though it is usual to state the conspiracy, and then show that in pursuance of it certain overt acts were done, it is sufficient to state the conspiracy alone. And it is not necessary to state the means by which the object was to be effected, as the conspiracy may be complete before the means to be used are taken into consideration. Reg. v. Best, 2 Ld. Raym. 1167; 3 Chit. Cr. Law, 1143. This is the rule at common law when the conspiracy is to commit some offense known to the law. It is only when the conspiracy is to commit some act not an offense that the indictment must show some illegal act done in pursuance of the conspiracy. Rex v. Seward, 1 Adol. & El. 706. Thus, where an indictment charged that the defendants conspired together, by indirect means, to prevent one H. B. from exercising the trade of a tailor, and it was contended that it should have stated the fact on which the conspiracy was founded, the means used for the purpose, Lord Mansfield, C. J., said: "The conspiracy is stated and its object; it is not necessary that any means should be stated." And Buller, J., said: "If there be any objection, it is that the indictment states too much: it would have been good, certainly, if it had not added, 'by indirect means,' and that will not make it bad." Note to Rex v. Turner, 13 East. 231. When the indictment charged that the defendant conspired by divers false pretenses and subtle means and devices to obtain from A. divers large sums of money, and to cheat and defraud him thereof, it was held that, the gist of the offense being the conspiracy, it was quite sufficient to state the fact and its object, and not necessary to set out the specific pretenses. Bailey, J.,

said: "When the parties had once agreed to cheat a particular person of his moneys, although they might not then have fixed on any means for that purpose, the offense of conspiracy was complete." Rex v. Gill, 2 Barn. & Ald. 204; State v. Bartlett, 30 Me. 132. But when the act only becomes illegal from the means used to effect it, the illegality of it should be explained by proper statements. Com. v. Hunt. 4 Metc. [Mass.] 111. These rules of pleading throw light upon the first objection made to the indictment.

The first and second counts of the indictment charge a conspiracy to prevent certain qualified voters from giving their support and advocacy in a lawful manner towards the election of a certain qualified person as a member of congress, and allege certain acts done in furtherance of the conspiracy. The law makes such a conspiracy an offense. Now, as the support and advocacy which the alleged conspirators sought to prevent were, as stated in the first and second counts, to be given in the future. it is clearly not necessary to allege what shape that support and advocacy were to take. The defendants could conspire to prevent the advocacy and support, in a lawful manner, by the voters, of the election to congress of the person named, without knowing by what means that advocacy and support were to be carried on, and even before the means were agreed upon by the persons by whom the support and advocacy were to be given. Might not the offense of conspiracy, as was said by Justice Bayley, be complete before it was possible to know or aver what was the manner in which the support and advocacy were to be given? As an indictment for conspiracy to do an unlawful act need not show what were the means to be used, the offense of conspiracy being complete before the means to carry out the conspiracy are agreed on: so we say that a conspiracy to prevent by force, intimidation and threats any citizen entitled to vote from giving his advocacy or support in a lawful manner to the candidate of his choice, need not set out the acts of advocacy and support, for the crime of conspiracy may be complete before the form in which the advocacy and support is to be given is known to the conspirators, or even to the persons against whom the conspiracy is directed. Suppose, for instance, three persons meet together and enter into a conspiracy, by which they agree, in order to prevent an influential person of the opposite political party from giving his support and advocacy to a particular candidate, to arrest him and restrain him of his liberty until after the election, and actually carry their purposes into execution. It is clear that the conspiracy forbidden by section 5520 would be complete, and yet it would be impossible to aver and prove what acts of support and advocacy by the person so restrained were contemplated by him, or were prevented by the conspiracy.

We are of opinion, therefore, that the first count, which does not state the acts of advocacy and support which the defendants are charged with conspiring to prevent, is not defective in that particular; and as the second and third counts do set out the acts which the conspiracy was directed to prevent, without, it is true, giving details of time and place, that a fortiori they are not open to the objection under consideration.

2. In support of the second objection to the indictment it is said that, under the law of conspiracies, should an overt act result in murder, the conspiracy is lost in the greater crime. The indictment, it is said, alleges that in the execution of the conspiracy the conspirators shot the parties against whom the conspiracy was formed, and it is claimed that these allegations show a merger of the lesser crime in the greater, and so, on the face of the indictment, show a want of jurisdiction in this court. It is sufficient to say, in answer to this objection, that, in the first place, the indictment does not disclose any crime committed by the defendants of a higher degree than the conspiracy charged, and if it did, it would not follow that this court would be ousted of jurisdiction to try the accused for conspiracy. Even if it were shown that the defendants had been guilty of murder—that being an offense against the law of another sovereignty, and not against the laws of the United States, and therefore not triable in the federal courts—this court would not be ousted of jurisdiction merely because it was disclosed that an offense of a higher grade had been committed against the laws of the state.

3. The third objection to the indictment, which was the one most earnestly pressed, is that the act upon which it is founded is unconstitutional—or, rather, to state the objection more precisely, that congress was without constitutional authority to pass the act. In the case of Fletcher v. Peck, 6 Cranch [10 U. S.] 187. Chief Justice Marshall said: "The question whether a law be void for its repugnancy to the constitution is at all times a question of delicacy which ought seldom if ever to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers and its acts to be considered void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." And in the case of Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 625, the same eminent judge said, speaking in reference to the constitutionality of a legislative act: "On more than one occasion this court has expressed the cautious circumspection with which it approaches the consideration of

such questions, and has declared that in no doubtful case would it pronounce a legislative act to be contrary to the constitution."

Guided by these words of caution, we shall consider the question now to be passed upon. The clauses of the constitution of the United States which it is claimed empower congress to pass the act in question are section 2 of article 1, which declares that "the house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature." and section 4 of the same article, which provides that "the times, places and manner of holding elections for the senators and representatives shall be prescribed in each state by the legislature thereof, but the congress may at any time, by law, make or alter such regulations, except as to the places of choosing senators," and the last clause of section eight, article one, which declares that "congress shall have power to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." The question whether this legislation is supported by section 2 of article 1, above quoted, depends on whether that section confers the right to vote for members of congress on such electors in the state as are qualified by its laws, as electors of the most numerous branch of the state legislature. If such a right is conferred, then it is a right which congress has power to protect by law. Rights and immunities created by, or dependent upon, the constitution of the United States, can be protected by congress. U. S. v. Reese, 92 U. S. 217; U. S. v. Cruikshank, Id. 542. It is true, and has been so said by the supreme court of the United States, that the constitution of the United States has not conferred the right of suffrage upon any one, and that the United States have no voters of their own creation in the states. Minor v. Happersett, 21 Wall. [88 U. S.] 178. But this language refers solely to voters at an election for state officers, and so far as such elections are concerned, the United States has no voters of its own. In the case of U. S. v. Reese, 92 U. S. 217, the supreme court expressly reserves any opinion on the effect of article 1, § 4, of the constitution in respect to elections for senators and representatives. The constitution does not describe a class who, independent of state laws, are entitled to vote for members of congress. But section 2 of article 1 declares in the most unmistakable terms that members of congress shall be chosen by the people of the several states, who shall have the qualifications requisite by the state laws for electors of the most numerous branch of the state legislature.

Now, the question is, has an elector who is qualified by state law to vote for the most numerous branch of the state legislature, a right conferred upon him by this clause of the constitution to vote for members of congress? To us it seems clear that he has. Suppose a state should attempt by law, though without distinction as to race, color or previous condition, to exclude a certain part of those having the qualifications requisite for electors of the most numerous branch of the state legislature from the right to vote for members of congress. Would such an act be constitutional? Clearly not. And it is clear also that it would deprive the excluded citizen of a right derived from the constitution of the United States, which says to him if you are qualified to vote for the most numerous branch of the state legislature you are qualified to vote for members of congress; and the house of representatives shall be composed of members chosen by electors such as you. It seems to be clear that the language of the section under consideration could not have been intended merely to give a basis of representation; that was provided for by other clauses of the constitution. If this be so, it must follow that it was intended as a declaration as to who of the people of the states should have the right to vote for representatives in congress. As, therefore, the elector qualified by state laws derives his right to vote for members of congress from the constitution of the United States, congress has the power to protect him in that right. Section 4 of article 1, in effect, declares that the congress may at any time, by law, make regulations prescribing the time, place and manner of holding elections for senators and representatives, except as to the places of choosing senators. The purpose of conferring this power upon congress was that the country might not be in danger of having no congress through the indifference of the states or their hostility to the general government. It was to place it out of the power of the states to prevent the election of a congress by obstructive laws or in any other way. The ultimate right of regulating the time, place and manner of choosing representatives, and the time and manner of choosing senators, was therefore given to congress, so that it might always be within the power of congress to secure the election of a senate and house of representatives. Story, Const. § 817.

The clause of the constitution under consideration does not confer rights or privileges upon the individual citizen. It is a clause framed to secure the existence of the government itself, and was made in the interest of all the people of all the states. Such being the object and scope, what is the power granted by it? It authorizes congress to regulate the time, place and manner of choosing representatives in congress. The terms "time and place" need no commentary. What is meant by the words "manner of holding elections?" An election is not simply the depositing of a ballot in a box. If the elector is forced to

vote a certain ballot against his will it is not an election so far as he is concerned, and equally so if he is prevented by violence from voting at all. An election is the expression of the free and untrammeled choice of the electors. There must be a choice and the expression of it to constitute an election. Under our American constitution an election implies a free interchange and comparison of views on the part of the people who are voters, and finally an independent expression of choice. Any interference with the right of the elector to make up his mind how he shall vote is as much an interference with his right to vote as if he were prevented from depositing his ballot in the ballot-box after he had made up his mind. It is conceded that congress may declare that the elections for representatives shall be by ballot. Congress has so declared without objection or challenge from any quarter. Rev. St. § 27. What was the purpose of that enactment? Clearly that the elector might be free to vote according to his choice. If it is within the power of congress for such a purpose to regulate his method of voting, congress could adopt any other measures leading to the same result. It could say that armed men should not infest the vicinity of the polls; it could say that the voters should have the right of free interchange of views on the day of voting. All this would as clearly be regulating the manner of holding the elections as prescribing that the election should be by ballot. If congress could make such regulations for election day it could make them for any previous day. In short, in prescribing the manner of holding elections, it could protect the voter in making his choice, and afterwards expressing that choice at the polls, for both these things are included in an election. Suppose our method of elections were like that used in England, where the candidates appear upon the hustings and address the voters, and the vote is taken, as it often is, by a show of hands; would not an act of parliament making any violence offered to the candidates, while addressing the voters, a penal offense be a regulation of the manner of holding the election? With us the canvass sometimes lasts for weeks, but that does not change the principle. Any law the purpose of which is to enable the voter to make a free and intelligent choice, and to express that choice freely at the ballot-box, is a regulation of the manner of holding the election.

The act of congress under consideration was framed for that purpose in respect to elections for representatives in congress, and it seems to us is plainly warranted by section 4, art. 1, of the constitution. The first and fourth sections of article 1, taken together, it seems to us leave no doubt upon the question. The first declares that representatives shall be elected by the people of the states, and adopts the qualification of electors prescribed by the states for electors of the most numerous branch of the legislature. The second authorizes congress to regulate the manner of holding such elections. The two sections are intended to place the election of representatives in the ultimate power of congress, so as to secure at all times a house of representatives, first by preventing obstructive legislation by the states, and, second, securing to the voter the protection of the general government.

We both concur in the opinion that the legislation under consideration is clearly within the constitutional power of congress, and our judgment is that the demurrer to the indictment should be overruled.